**Michael A. CRANE, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary, Health & Human Services, Defendant–Appellee.**

**No. 94–35557.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1995.

Memorandum Oct. 23, 1995.

Order and Opinion Feb. 14, 1996.

Harvey Grad, Seattle, Washington, for plaintiff-appellant.

Kathryn A. Warma, Assistant Regional Counsel, Department of Health and Human Services, Seattle, Washington, for defendant-appellee.

Appeal from the United States District Court for the Western District of Washington; John C. Coughenour, District Judge, Presiding.

Before: WRIGHT, ALARCON and CANBY, Circuit Judges.

## ORDER

The request for publication is **GRANTED.** The memorandum disposition filed on October 23, 1995, is redesignated as an authored opinion by Judge Wright.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

An administrative law judge denied Crane's application for social security disability insurance benefits. The district court affirmed and Crane appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## BACKGROUND

Crane has prior work experience as a laborer, carpenter, forest fire fighter, wheelabrator, cannery clean-up worker and fish hatchery worker. In July 1987, he filed an application for social security benefits, alleging mental disability. An ALJ denied this application. He filed a second application in 1988. An ALJ conducted a hearing at which Pam Hutchinson, a social worker and therapist, testified. The ALJ found that Crane suffered from severe depression and anxiety, but that he did not have an impairment listed in the social security regulations. The ALJ rejected both Crane's testimony and Hutchinson's testimony. He found that during the insured period, from January 1984 through September 1986, Crane could perform his prior work except for jobs involving high stress or requiring sustained complex or detailed tasks. He concluded that because Crane could work at all of his prior jobs except for fire fighting, he was not disabled.

## ANALYSIS

### 1. Rejection of Disability Claim

Crane argues that the record lacks substantial evidence to support the determination that he was not disabled. To the contrary, the record lacks any evidence of mental impairment from the alleged onset date, January 16, 1984, until midway through the insured period, in July 1985. Evidence of impairment finally surfaced in the form of three psychological evaluations, dated July 1985, October 1985 and August 1986. The ALJ, however, permissibly rejected them because they were check-off reports that did not contain any explanation of the bases of their conclusions. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports).

The August 1987 letter of Pam Hutchinson supports the ALJ's findings that prior to the expiration of benefits on September 30, 1986, Crane was involved "in a wide array of activities." The ALJ, however, properly discounted Hutchinson's testimony regarding his disability. She was reluctant to express an opinion as to the existence and severity of Crane's condition prior to September 30, 1986, because his therapy began on September 17, 1986, and because that therapy initially involved marital counseling of Crane and his wife rather than individual therapy for Crane.

In an August 1987 letter, Dr. Doug Trotter, a treating physician, stated that Crane's mental state was "normal with the exception of intermittent signs of mild depression" and that he "should be fully employable." This testimony may alone constitute substantial evidence. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (treating physician's opinion generally afforded "greater weight"). Crane cites a Sixth Circuit case, Sherrill v. Secretary, 757 F.2d 803, 805–06 (6th Cir.1985), for the contention that Trot-

ter's letter is not substantial evidence because the letter does not indicate that Trotter was ever asked to consider his mental state and because Trotter is not a psychiatrist. Unlike Trotter, however, the physician in *Sherrill* was not a treating physician of the claimant. *Id.* His testimony was ambivalent as to the claimant's psychiatric impairment and was directly contradicted by the testimony of two treating psychiatrists. *Id.* at 804.

■ Here, the only testimony contradicting Trotter is that of Hutchinson, who is a therapist and social worker but not a physician. As a licensed physician, Trotter is qualified to state a medical opinion on Crane's mental state even though he is not a psychiatrist. *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987).

Because a reasonable mind could conclude on the basis of the evidence of record that Crane was not disabled, we find that substantial evidence supports the ALJ's findings. *Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir.1995).

**2. Rejection of Claimant's Testimony**

■ Crane asserts that the ALJ erred in rejecting his testimony. The judge rejected it because it "was not fully credible and not consistent with the objective findings...." In making this determination, the ALJ considered Crane's daily activities, the notes of the treating therapist, and the evidence suggesting that he responded well to treatment for depression. Although the findings upon which this determination was based were not as extensive as they might have been, they sufficed to show that the ALJ did not arbitrarily reject his testimony. Substantial evidence supported the judge's evaluation of Crane's testimony and we will not upset his determination. *See Magallanes,* 881 F.2d at 750 ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony.").

**3. Rejection of Hutchinson's Testimony**

■ Crane argues that the ALJ erred in rejecting Hutchinson's medical testimony that he had been disabled since 1984. He focuses on the ALJ's statement that the testimony was suspect because Hutchinson helped him apply for benefits and that, as an advocate for him, she was not objective. Citing *Ratto v. Secretary, Dept. of Health & Human Services,* 839 F.Supp. 1415, 1426 (D.Or.1993), he argues that the ALJ may not discount reports solely because they were procured by the claimant rather than by the Secretary. Unlike the *Ratto* case, however, the witness here was involved in the application process and not just in preparing evidence. The ALJ was entitled to consider this factor in evaluating her testimony. *See Allen v. Heckler,* 749 F.2d 577, 578–80 (9th Cir.1984).

Moreover, the ALJ specifically cited other reasons for rejecting her testimony: (1) Hutchinson saw Crane for only two weeks before the date last insured; (2) her treating notes suggested that Crane suffered from depression and anxiety, but had varying levels of control; and (3) there was no evidence that Crane could not perform simple repetitive tasks similar to his prior work even after the last date insured. The ALJ also noted that the initial therapy involved both Crane and his wife and therefore did not address Crane's problems specifically. Substantial evidence supported the judge's conclusions and he did not err in rejecting Hutchinson's testimony.

Crane contends that Hutchinson's testimony also qualified as lay testimony and that the ALJ erred in rejecting it. He cites *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993), which holds that an ALJ may not discount a lay witness's testimony without citing reasons germane to the witness. As noted, however, the ALJ did detail several factors germane to Hutchinson and sufficient to discount her testimony. Also, the record does not show that Hutchinson had sufficient contact with Crane during the relevant time to qualify as a competent lay witness. *Cf. Sprague,* 812 F.2d at 1232 ("Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."). Again, the ALJ did not err in rejecting her testimony.

### 4. Application of the Sequential Evaluation

Crane asserts that evidence in the record shows that his disability was listed in the regulations, *see* 20 C.F.R., Subpt. P, App. 1, Section 12.00, and contends that the ALJ erred in concluding otherwise in the application of the five-step sequential evaluation for determining eligibility for disability benefits. *See* 20 C.F.R. § 404.1520. To support that assertion, he points to two letters and an evaluation by Hutchinson. As the Secretary argues, however, the reports and letters were prepared long after Crane's insured status expired. The earliest letter in the record is dated nearly one year after Crane's insured status expired and the report concluding that his disability was listed in the regulations is dated more than three years after the expiration.

■ Crane also asserts that the ALJ erred by failing to call a vocational expert pursuant to step five of the sequential evaluation. *See* 20 C.F.R. § 404.1520(f). In the fourth step of the evaluation, however, the ALJ determined that Crane's impairment did not prevent him from performing past relevant work except for forest fire fighting and that he therefore was not disabled. *See id.* § 404.1520(e). This determination made it unnecessary for the ALJ to proceed to the fifth step to determine whether he had the residual functional capacity to perform other work. *See* 20 C.F.R. § 404.1520(f); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).

The determination that Crane could perform his past relevant work also negates his argument that the ALJ erred in the application of the medical-vocational guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (stating that guidelines apply when claimant cannot perform prior work). We reject the contention that the ALJ erred by failing to call a vocational expert or otherwise erred in applying the five-step sequential evaluation.

### 5. Development of the Record

■ The ALJ has a duty to develop the record even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). Crane argues that the ALJ failed to meet this duty by not requiring submission of treatment notes and by not calling a medical expert regarding the onset date of the disability. The treatment notes, however, concerned only the time period after the insured status expired. Because the ALJ found that Crane could have returned to his prior work and was not disabled, the judge needed no medical expert to determine the onset date of the alleged disability. We reject the assertion that the ALJ failed to develop the record adequately.

### 6. Reopening of Crane's Prior Application

■ Citing *Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir.1990), Crane contends that the ALJ erred by failing to reopen his first application. The court in *Gonzalez* held that the form notice rejecting an application violated due process because it failed to inform the claimant that the Secretary's determination was final if reconsideration was not sought. *See id.* at 1203. The case does not apply here. The initial application, denied but never appealed, alleged an April 1984 onset of disability. The second application alleged an earlier onset date of January 16, 1984. In rejecting the second one, the ALJ considered evidence from January 16, 1984, until Crane's insured status expired. The ALJ therefore fully considered the period covered by the first application. We reject the contention that the ALJ erred by failing to reopen it.

### 7. Failure to Consider Title XVI Benefits

■ Crane contends that the ALJ erred by not considering Title XVI benefits. Both of his Title II applications said that he had filed or intended to file for Title XVI benefits, but the record does not contain an application for them. While a Title II application is considered as an oral inquiry into Title XVI benefits, 20 C.F.R. § 416.350, to obtain them a claimant must actually file an application, 20 C.F.R. §§ 416.305 & .310. Crane made no showing that he ever filed an application. We reject his assertion that the ALJ erred by failing to consider Title XVI benefits.

## CONCLUSION

Because we affirm the district court's judgment, we need not address Crane's request for attorney fees.

**AFFIRMED.**